UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Michael and Ginger Fortin
on behalf of Minor Child, TF

    v.                                    Civil No. 15-cv-179-JL
                                      Opinion No. 2017 DNH 193P
Hollis School District and
Lisa Keehan

**MEMORANDUM ORDER**

The school district defendant's liability in this
discrimination case turns on whether it may be held vicariously
liable under Title II of the Americans with Disabilities Act
("ADA"), 42 U.S.C. § 12131 et seq., for the actions of one of
its employees of which, the parties agree, it was not aware.
Lisa Keehan was a paraprofessional employed by the Hollis School
District to work one-on-one with TF, a child diagnosed with
autism.  During a videorecorded classroom interaction, Keehan
grabbed and tugged TF's ear.  Michael and Ginger Fortin, TF's
parents, bring this action on his behalf, asserting disability
discrimination claims against Hollis and a claim against both
Hollis and Keehan for common-law assault and battery.  Hollis
has moved for summary judgment on the federal statutory claims,
arguing that it may not be held liable for Keehan's actions
when, as the plaintiffs concede, it was unaware of them.

The court has jurisdiction over this matter under 28 U.S.C. § 1331 (federal question). After hearing oral argument, the court grants Hollis's motion in part and denies it in part. It may not, as it argues, be held directly liable for Keehan's actions absent knowledge that those actions occurred. It may, however, be held vicariously liable for those same actions under the doctrine of respondeat superior if Keehan intentionally discriminated against TF on the basis of his disability, an issue that cannot be resolved at summary judgment.

## I. Applicable legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must "assert the absence of a genuine issue of material fact and then support that assertion by affidavits, admissions, or other materials of evidentiary quality." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). "A genuine issue is one that could be resolved in favor of either party, and a material fact is one that has the potential of affecting the outcome of the case." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotation omitted).

Once the movant has made the requisite showing, "the burden shifts to the summary judgment target to demonstrate that a trialworthy issue exists."  Id.  The nonmoving party "'may not rest upon the mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue' of material fact as to each issue upon which he or she would bear the ultimate burden of proof at trial." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52-53 (1st Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

As it is obligated to do in the summary judgment context, the court "rehearse[s] the facts in the light most favorable to the nonmoving party (here, the plaintiff), consistent with record support," and gives him "the benefit of all reasonable inferences that those facts will bear." Noviello v. City of Boston, 398 F.3d 76, 82 (1st Cir. 2005) (internal citation omitted).  The following background takes this approach.

## II.  **Background**

The minor on whose behalf this action was brought, TF, was born in 2005.  He has been diagnosed with autism, and has speech and language disorders and a seizure disorder.  In 2010, he began attending kindergarten five afternoons a week at the Hollis Primary School.  The District, with input from his

parents, developed an Individualized Education Plan ("IEP") for TF and assembled a team of teachers, counselors, and other professionals to assist in his education. The District also assigned him a one-on-one paraprofessional during school hours. Defendant Keehan served as one of his paraprofessionals during the relevant time period.

On May 28, 2014, toward the end of TF's third-grade year, Keehan, reacting to TF's perceived lack of responsiveness, reached across a table and pulled his ear. Keehan was working with TF behind a screen or partition, which she often did because he could easily become distracted. On this particular afternoon, another member of TF's IEP team, Sherri Harris, videotaped their interaction by holding a camera over the partition.[1] Harris viewed the footage the next day. She immediately brought it to the attention of the school's administrator, who sent Keehan home and reported the incident to the District's Director of Student Services, Amy Rowe. Rowe notified Ms. Fortin, showed her the video, and gave her a copy. After a brief period of administrative leave, Keehan resigned effective June 5, 2014.

---

[1] According to the District, videotaping TF in the classroom "was part of developing his NH ALPS Alternate Assessment portfolio," and thus was not a unique occurrence. Defendant's Mem. (doc. no. 28-1) at 7.

The parties dispute whether Keehan engaged in similar behavior with TF prior to this incident. The plaintiffs contend that "the assault shown in the videotape was not an isolated act," which Hollis alleges it was, "but part of an ongoing pattern of abuse against TF."[2] They do not dispute, however, that Hollis "lacked prior notice of Lisa Keehan engaging in assaults against TF . . . ."[3]

The plaintiffs filed this lawsuit on May 18, 2015. They brought claims under § 504 of the Rehabilitation Act, 29 U.S.C. § 794, (Count 1) and Title II of the ADA (Count 2) against Hollis, and a claim for assault and battery (Count 3) against both defendants. Hollis moved for summary judgment on Counts 1 and 2. In their objection, the plaintiffs stated an intention to dismiss their Rehabilitation Act claim with prejudice[4] and disavowed any "failure to provide services" claim under the ADA

---

[2] Plaintiffs' Obj. (doc. no. 31-1) at 5. As evidence of this, the plaintiffs cite, among other things, see infra Part III.B.2, Keehan's own admissions to Rowe that she had physically forced his hands off of a table and forced him to his knees earlier that same day, as well as a belief that grabbing TF's ear or hair to get him to sit down was permitted by school district policy. Plaintiffs' Obj. (doc. no. 31-1) at 4 (citing Rowe Dep. (doc. no. 31-5) at 67-68, 70).

[3] Id. at 3.

[4] Plaintiffs' Obj. (doc. no. 31-1) at 2-3 ("[T]o simplify the legal issues, Plaintiff will file a Motion to withdraw Count I with prejudice."). Plaintiffs' counsel confirmed this withdrawal at oral argument.

separate from their disability discrimination claim.[5]  This
leaves before the court only the question of whether Hollis may
be held liable for Keehan's actions under Title II of the ADA.

## III. <u>Analysis</u>

Title II of the ADA provides that:  "no qualified
individual with a disability shall, by reason of such
disability, be excluded from participation in or be denied the
benefits of the services, programs, or activities of a public
entity, or be subjected to discrimination by any such entity."
42 U.S.C. § 12132.  Pursuant to the statute's plain language, a
plaintiff seeking to recover under Title II of the ADA must
establish:

> (1) that he is a qualified individual with a
> disability;
>
> (2) that he was either excluded from participation in
> or denied the benefits of some public entity's
> services, programs, or activities or was otherwise
> discriminated against; and
>
> (3) that such exclusion, denial of benefits, or
> discrimination was by reason of the plaintiff's
> disability.

Parker v. Universidad de Puerto Rico, 225 F.3d 1, 5 (1st Cir.
2000).  "[P]rivate individuals may recover compensatory damages

---

[5] Id. at 8-9 ("The Court does not need to decide the legal
sufficiency of this [failure to provide services] claim because
Plaintiff does not allege it as an independent cause of
action.").

under § 504 and [ADA] Title II only for intentional discrimination."[6] Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 126 (1st Cir. 2003) (citing Alexander v. Sandoval, 532 U.S. 275, 280-81 (2001)).

The parties here agree, for purposes of this motion, that TF is a qualified individual with a disability. The plaintiffs allege the second two elements are met because TF was discriminated against by reason of his disability when Keehan used physical force to punish him.[7] Hollis generally disputes that use of physical force in this instance amounted to disability-based discrimination,[8] but focuses its arguments on whether it may be held liable -- directly or vicariously -- for Keehan's actions.[9] The court, likewise focusing on that issue, concludes that, though Hollis may not be held directly liable for those actions, it may face vicarious liability for an employee's intentional discrimination against TF on the basis of his disability.

---

[6] The plaintiffs seek only compensatory damages. See Compl. (doc. no. 1) at 6.

[7] See Compl. (doc. no. 1) ¶ 33.

[8] See Defendant's Reply (doc. no. 33) at 4-8.

[9] See Defendant's Mem. (doc. no. 28-1) at 15-22.

**A.  Direct liability**

In order to demonstrate intentional discrimination under Title II of the ADA, most Courts of Appeals that have addressed the question require the plaintiff to show at least "that a defendant was deliberately indifferent to his statutory rights." McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1146–47 (11th Cir. 2014); see also J.V. v. Albuquerque Pub. Sch., 813 F.3d 1289, 1298 (10th Cir. 2016) ("We have recognized that 'intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights.'" (citation omitted)); S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 263 (3d Cir. 2013) ("We now follow in the footsteps of a majority of our sister courts and hold that a showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA and § 202 of the ADA."); Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011) ("The district court decided that deliberate indifference was the appropriate standard for showing intentional discrimination in this type of case.  A number of other circuits have so ruled, and we agree."); S.S. v. E. Kentucky Univ., 532 F.3d 445, 454 (6th Cir. 2008) (applying "deliberate indifference" standard); Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001),

as amended on denial of reh'g (Oct. 11, 2001) ("To recover
monetary damages under Title II of the ADA or the Rehabilitation
Act, a plaintiff must prove intentional discrimination on the
part of the defendant. . . . We now determine that the
deliberate indifference standard applies."); Bartlett v. New
York State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir.
1998), judgment vacated on other grounds, 527 U.S. 1031 (1999)
("[I]ntentional discrimination may be inferred when a
'policymaker acted with at least deliberate indifference to the
strong likelihood that a violation of federally protected rights
will result from the implementation of the [challenged] policy .
. . [or] custom.'" (quoting Ferguson v. City of Phoenix, 931 F.
Supp. 688, 697 (D. Ariz. 1996)) (alterations in original)).[10]

The First Circuit Court of Appeals has not directly
addressed the question of which standard applies to show
intentional discrimination by the school district under the ADA
when a school district employee acts against a child with a
disability.  It has, however, suggested that a plaintiff "may"
need to make "some showing of deliberate indifference not

---

[10] Several of these decisions require that a "policymaker" act
with deliberate indifference, or that the institution act with
deliberate indifference that its "policies" would violate a
plaintiff's rights.  E.g., Durrell, 729 F.3d at 263; Bartlett,
156 F.3d at 331.  Neither party has argued, here, that liability
must be so limited.

required by" the Individuals with Disabilities Education Act
(IDEA), 20 U.S.C. §§ 1400–1491, to recover under § 504 of the
Rehabilitation Act.  Nieves-Márquez, 353 F.3d at 125 n.17.
Because the First Circuit Court of Appeals, "[i]n applying Title
II [of the ADA]. . . rel[ies] interchangeably on decisional law
applying § 504," Parker, 225 F.3d at 4, this court may
reasonably assume that it would apply at least the "deliberate
indifference" standard to ADA-based discrimination claims.  See
also id. at 4 & n.2 (noting that Title II of the ADA "is modeled
on § 504 of the Rehabilitation Act," and "essentially extends
the reach of § 504 to state and local governmental entities that
do not receive federal financial assistance.").

    Under similar circumstances, the First Circuit Court of
Appeals has required an even more exacting showing to
demonstrate intentional discrimination.  Specifically, the court
distinguished between the requisite showing to prove claims
brought under IDEA for a school district's failure to provide a
free appropriate public education (FAPE) from discrimination
claims brought under § 504 of the Rehabilitation Act and
Title II of the ADA for the same actions.  To prevail on the
former, it explained, "a plaintiff must show that he or she has
a qualifying disability and has been denied a FAPE," whereas to
prevail on the latter, "a plaintiff must make an additional
showing that the denial resulted from a disability-based

animus." D.B. ex rel. Elizabeth B. v. Esposito, 675 F.3d 26, 40 (1st Cir. 2012). See also Durrell, 729 F.3d at 263 (characterizing the First Circuit Court of Appeals's decision in Nieves-Márquez as "suggest[ing] that plaintiffs seeking compensatory damages [under the ADA] must demonstrate a higher showing of intentional discrimination than deliberate indifference, such as discriminatory animus.").

This court need not decide definitively on which standard governs because the plaintiffs concede that they are unable to make the requisite showing under even the lower, "deliberate indifference" standard.[11] See Doe v. Bradshaw, 203 F. Supp. 3d 168, 191 (D. Mass. 2016) (Woodlock, J.) (interpreting Nieves-Márquez and Esposito to require at least deliberate indifference on part of school district under Title II of the ADA and performing analysis under that standard). "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." Duvall, 260 F.3d at 1139 (citing City of Canton v. Harris, 489 U.S. 378, 389 (1988)); see also Santiago v. Puerto Rico, 655 F.3d 61, 73 (1st Cir. 2011) (in the Title IX context, "the deliberate indifference standard . . . demands that [the defendant] be shown to have had actual

---

[11] Plaintiffs' Obj. (doc. no. 31-1) at 2.

knowledge of the harassment" and to have failed to take remedial action).  The plaintiffs here concede that Hollis "was unaware of the assaults [on TF] until after they occurred."[12]  Absent such knowledge, Hollis cannot have been deliberately indifferent to the actions taken against TF by its employee.  There is, accordingly, no dispute of material fact as to whether Hollis intentionally discriminated against TF.

## B.   Vicarious liability

Recognizing the difficulty of proving Hollis's deliberate indifference, the plaintiffs argue that Hollis is instead "strictly responsible for the acts of [its] agent," so long as the agent, as distinct from the principal, intended to discriminate against TF -- which, plaintiffs contend, Keehan did.[13]  Hollis contends that such vicarious liability does not apply under Title II of the ADA and that, even if it did, the plaintiffs have not raised a question of material fact as to whether Keehan violated TF's rights under the ADA.

---

[12] Plaintiffs' Obj. (doc. no. 31-1) at 2.

[13] Id.  As they point out, see Plaintiffs' Reply (doc. no. 34) at 2, and as discussed infra Part III.B.2, the question of Keehan's intent is one for the jury.

### 1.   Availability of vicarious liability

Several Courts of Appeals have concluded that "that when a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the [Rehabilitation Act], the public entity is liable for the vicarious acts of <u>any</u> of its employees as specifically provided by the ADA." Delano-Pyle v. Victoria Cty., 302 F.3d 567, 574–75 (5th Cir. 2002) (citing Duvall, 260 F.3d at 1141; Silk v. City of Chicago, 194 F.3d 788, 806 (7th Cir. 1999); Rosen v. Montgomery Cty., 121 F.3d 154, 157 (4th Cir. 1997); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996)).  Though the First Circuit Court of Appeals has not addressed the question, and the Supreme Court recently declined to do so, City & Cty. of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1773–74 (2015), courts in this Circuit have acknowledged that an employer may be held vicariously liable for an employee's violation of § 504 of the Rehabilitation Act, Penney v. Town of Middleton, 888 F. Supp. 332, 340 (D.N.H. 1994) (Barbadoro, J.); Glanz v. Vernick, 756 F. Supp. 632, 636–37 (D. Mass. 1991).  It must be acknowledged that these decisions predate the Supreme Court's holding in Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998), that Title IX, a funding statute,[14] does not support vicarious liability.  Courts

---

[14] Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq., § 504 of the Rehabilitation Act, and Title II

have more recently taken Gebser into account and concluded that
vicarious liability may yet be available under the ADA and
Rehabilitation Act.  See, e.g., Reed v. State of Illinois,
No. 12-CV-7274, 2016 WL 2622312, at *3 (N.D. Ill. May 9, 2016)
(concluding, after considering Gebser and relevant Seventh
Circuit precedent, that vicarious liability may apply).

Under circumstances almost identical to this case, where a
teacher physically assaulted an autistic student, the District
Court for the Northern District of California recently concluded
that the school district "is liable in respondeat superior for
the acts of its employees" under Title II of the ADA for the
abuse so long as the plaintiff demonstrated "that the
perpetrator of the alleged abuse," that is, the teacher "was
deliberately indifferent to her rights."  K.T. v. Pittsburg
Unified Sch. Dist., 219 F. Supp. 3d 970, 981 (N.D. Cal. 2016).

---

of the ADA all share similar wording with Title VI of the Civil
Rights Act of 1964, 42 U.S.C. § 2000d.  The remedies available
under the ADA and the Rehabilitation Act are drawn from
Title VI.  29 U.S.C. § 794a (§ 504 incorporates Title VI's
remedies); 42 U.S.C. § 12133 (Title II incorporates § 504's
remedies).  Title VI, § 504, and Title IX were all enacted
through Congress's power under the Spending Clause, U.S. Const.
art. I, § 8, cl. 1.  See Gebser, 524 U.S. at 287.

Title II of the ADA, on the other hand, like Title VII of the Civil
Rights Act, 42 U.S.C. § 2000e-2(a), was enacted under the power
granted Congress through § 5 of the Fourteenth Amendment.  See
Tennessee v. Lane, 541 U.S. 509, 533-34 (2004).

Hollis argues that the Supreme Court's exclusion of such vicarious liability under the similarly-worded Title IX in Gebser, 524 U.S. at 290, should extend to the § 504 of the Rehabilitation Act and Title II of the ADA.  The Supreme Court concluded that "Congress did not intend to allow recovery in damages" under Title IX or the similarly-enacted Title VI "where liability rests solely on principles of vicarious liability or constructive notice," in part because an entity receiving federal funding ought be afforded an opportunity to remediate discrimination by its employees before having its funding revoked.  Id. at 287-88.  "That contractual framework distinguishes Title IX from Title VII, which is framed in terms not of a condition but of an outright prohibition," regardless of federal funding.  Id. at 286.

As the plaintiffs point out, Title II of the ADA, like Title VII, was enacted under the power granted to Congress by § 5 of the Fourteenth Amendment and is an outright prohibition on discrimination.  They argue, therefore, that the court should look to Title VII, which permits an employer to be held vicariously liable "[w]hen a supervisor's harassment of an employee results in a 'tangible employment action against the employee' . . . ."[15]  Agusty-Reyes v. Dep't of Educ. of Puerto

---

[15] Hollis argues that, even if such vicarious liability applied in this case, it could not be held so liable because Keehan is

Rico, 601 F.3d 45, 53 (1st Cir. 2010) (quoting Burlington
Indus., Inc. v. Ellerth, 524 U.S. 742, 764 (1998)).  The
plaintiffs have not, however, cited a single case in which any
court has applied Title VII's respondeat superior standard to
the Title II context.

The court is thus reluctant to wade into the question of
whether Title II of the ADA more closely resembles Title IX,
which it does in structure, or Title VII, which it does in
Constitutional provision under which Congress authorized the
statute.  Most relevant to this court is the fact that all
Courts of Appeals that have considered the issue appear to
permit an employer to be held vicariously liable under Title II
for intentional discrimination by its employees.[16]  Hollis has

_____

not a supervisor as understood and regulated under Title VII.
See Defendant's Reply (doc. no. 33) at 3.  Though the court need
not reach this issue because it does not draw on Title VII for
its respondeat superior analysis, it notes that Keehan was in a
position of authority over the child whom she was alleged to
have discriminated against and in that sense, at least, was his
"supervisor."

[16] As the plaintiffs noted at oral argument, Title II of the ADA
"does not provide for claims against individuals in their
individual capacities."  Abbott v. Town of Salem, 2006 DNH 12,
11 (quoting Miller v. King, 384 F.3d 1248, 1277 (11th
Cir.2004)).  "Only public entities are subject to Title II."
San Francisco, 135 S. Ct. at 1773.  The absence of vicarious
liability under circumstances such as these may therefore leave
plaintiffs in this position without a remedy where a teacher has
taken pains to hide the assaultive conduct from the school
district, frustrating the ADA's directive "to provide a clear
and comprehensive national mandate for the elimination of

offered no authority holding the contrary under Title II or the Rehabilitation Act.[17]  Thus, Hollis has failed to establish as a matter of law that it may not be held vicariously liable for Keehan's actions.

### 2.  Disputes of material fact

Hollis argues that, even if the ADA permits vicarious liability for Keehan's actions, there is no dispute of material fact over whether Keehan intentionally discriminated against TF on the basis of his disability.[18]  The court disagrees.

---

discrimination against individuals with disabilities." Parker, 225 F.3d at 4 (quoting 42 U.S.C. § 12101(b)(1)).

[17] Hollis relies on two cases to support its position, neither of which prevents vicarious liability in this situation.  In S.B. v. Bd. of Educ. of Harford Cty., 819 F.3d 69, 75-76 (4th Cir. 2016), the Fourth Circuit Court of Appeals held that a county board of education could not be held vicariously liable for one student's harassment of another under the Rehabilitation Act. This case is inapposite because it addressed vicarious liability for the actions of a non-employee.

The Eleventh Circuit Court of Appeals, relying on Gebser, concluded that the deliberate indifference of a hospital's medical personnel could not be imputed to the hospital itself for purposes of determining the hospital's own direct liability under the Rehabilitation Act.  Liese v. Indian River County Hosp. Dist., 701 F.3d 334, 348-49 (11th Cir. 2012).  The court did not directly address the question of vicarious liability, which it found the plaintiff had waived, but "note[d] that several circuits have found respondeat superior liability to apply to suits brought under the Rehabilitation Act."  Id. at 349 n.10 (citing Delano-Pyle, 302 F.3d at 574-75; Duvall, 260 F.3d at 1141; Rosen, 121 F.3d at 157 n.3; Patton v. Dumpson, 498 F. Supp. 933, 942-43 (S.D.N.Y. 1980)).

[18] Defendant's Reply (doc. no. 33) at 4-8.

As Hollis conceded at oral argument, physically assaultive conduct can constitute disability-based discrimination. Against that backdrop, the plaintiffs have raised at least one significant question of fact: whether Keehan grabbed his ear only once or engaged in a pattern of discriminatory assaultive behavior against him. Hollis argues that, as an isolated incident, Keehan's behavior was not "sufficiently severe, pervasive, and objectively offensive" to amount to disability-based discrimination.[19] Because the plaintiffs can produce direct evidence of only one instance of Keehan using force with TF, Hollis contends, they cannot demonstrate the severity and pervasiveness of her behavior.

There is, however, additional evidence from which a jury could conclude that Keehan engaged in a pattern of such conduct. Though there is no video evidence of other physical

---

[19] Id. at 7. Hollis draws this standard from cases addressing a school district's direct liability for student-on-student harassment. See Harford Cty., 819 F.3d at 76 (citing Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 650 (1999)). The court is not convinced that a teacher's intentional discrimination requires such "severe, pervasive, and objectively offensive" behavior. See Pittsburg, 219 F. Supp. 3d at 981 (requirement that non-verbal autistic student "need only allege that the perpetrator of the alleged abuse was deliberately indifferent to her rights" satisfied where teacher "knew about [the student's] disability but . . . still went forward with the alleged abuse."). But, as the plaintiffs point out, see Plaintiffs' Surreply (doc. no. 34) at 4, even if that standard applies here, a dispute of fact remains as to whether it is met.

interactions, Keehan appears to have admitted to Rowe that she forced TF's hands off a table and forced him to his knees earlier that same day.[20] She further informed Rowe that she thought school district policy permitted ear grabbing and hair pulling as methods of keeping TF seated during lessons,[21] from which a jury could infer that the videotaped ear-pulling incident was not an isolated incident. She never affirmatively stated that it was.[22] The fact that she took such an action knowing that she was being videotaped and did not herself affirmatively report it as an isolated occurrence born of frustration further supports that inference.

The plaintiffs also raise the number of visits TF made to the school nurse and his family doctor, and a repetitive complaint of ear pain absent any infection.[23] Though, as Hollis points out, this circumstantial evidence is in no way definitive, drawing all inferences in the plaintiffs' favor -- as the court must in this procedural posture -- a reasonable

---

[20] Plaintiffs' Obj. (doc. no. 31-1) at 4 (citing Rowe Dep. (doc. no. 31-5) at 67-68, 70).

[21] Id.

[22] Plaintiffs' Surreply (doc. no. 34) at 4.

[23] Plaintiffs' Obj. (doc. no. 31-1) at 4-5 (citing Michael Fortin Dep. (doc. no. 31-6) at 23-24; Varanese Dep. (doc. no. 31-7) at 26-27).

jury could conclude from it that Keehan engaged in an ongoing
pattern of assaultive conduct.

Keehan's intent also remains an unresolved question of
material fact.  Before Hollis can be held vicariously liable,
the plaintiffs must demonstrate that Keehan intentionally
discriminated against him on the basis of his disability.  See
Nieves-Márquez, 353 F.3d at 126.  Intentional discrimination
requires at least deliberate indifference and, at most,
discriminatory animus.  See supra Part III.A.  The record
evidence does not conclusively establish that Keehan acted with
the requisite intent, leaving this a question for the jury to
resolve.  See Petitti v. New England Tel. & Tel. Co., 909 F.2d
28, 32 (1st Cir. 1990) ("Intent to discriminate is a question of
fact and [the court] must leave this determination to the
jury.").

With disputes of fact such as these in play -- disputes
that touch on the most basic elements of the plaintiffs' claims
-- the court must deny Hollis's motion for summary judgment on
the issue of vicarious liability.

## IV.  Conclusion

For the reasons set forth above, the court GRANTS Hollis's motion for summary judgment[24] as to its own direct liability, but DENIES it as to its vicarious liability for Keehan's actions.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge


Dated:     September 18, 2017

cc:  H. Jonathan Meyer, Esq.
     Brian J.S. Cullen, Esq.
     Charles P. Bauer, Esq.
     Matthew Vernon Burrows, Esq.

---

[24] Document no. 28.